IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL VICTOR SAAVEDRA,

    Plaintiff,

  v.                                                                                                1:16-cv-00822-LF

NANCY A. BERRYHILL,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

**MEMORANDUM ORDER AND OPINION**

THIS MATTER comes before the Court on plaintiff Manuel Victor Saavedra's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 15), which was fully briefed on May 22, 2017. Docs. 18, 19, 20. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of non-examining state agency medical consultant Dr. Scott Walker. The Court therefore GRANTS Mr. Saavedra's motion and remands this case to the Commissioner for proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. Saavedra, currently age 57, was in special education throughout school, and dropped out in the twelfth grade. AR 45–46, 206.[4] He took the GED twice, but did not pass. AR 45. Mr. Saavedra worked primarily in construction as a laborer, plumber, plasterer, and painter. AR 58, 75, 257. He also had shorter periods of work unloading mail from airplanes, and as a stocker in a grocery store. AR 58–59, 75. Mr. Saavedra filed applications for disability insurance

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

benefits and supplemental social income on September 15, 2011—alleging disability since January 1, 2011 due to hearing loss, hepatitis C, and a blood disorder. AR 85–86, 246. The Social Security Administration ("SSA") denied his claims initially on April 26, 2012. AR 85–110. The SSA denied his claims on reconsideration on June 5, 2013. AR 151–54. Mr. Saavedra requested a hearing before an ALJ. AR 161–62. On August 7, 2014, ALJ John W. Rolph held a hearing. AR 37–84. ALJ Rolph issued his unfavorable decision on November 4, 2014. AR 13–36.

The ALJ found that Mr. Saavedra was insured for disability benefits through December 31, 2014. AR 18. At step one, the ALJ found that Mr. Saavedra had not engaged in substantial, gainful activity since January 1, 2011, the alleged date of onset. *Id.* Because Mr. Saavedra had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. AR 18–19. At step two, the ALJ found that Mr. Saavedra had the following severe impairments: "liver problems (hepatosplenomegaly/cirrhosis/esophageal varices); Hepatitis C with fatigue; bilateral sensorial hearing loss; left shoulder problems/pain; obesity; lumbar arthritis; learning disorder NOS (reading/writing/mathematics); and depressive disorder NOS." AR 18. Also at step two, the ALJ found that Mr. Saavedra had several nonsevere impairments. AR 19. At step three, the ALJ found that none of Mr. Saavedra's impairments, alone or in combination, met or medically equaled a Listing. AR 19–21. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Saavedra's RFC. AR 21–28. The ALJ found that:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) including the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently. He may occasionally climb ramps and sta[i]rs, balance, stoop, kneel, crouch and crawl, but may never climb ladders, ropes, and scaffolds. He may occasionally reach overhead with the non-dominant left upper extremity, and may frequently reach, handle, finger, and feel with both

4

upper extremities. He must avoid more than occasional exposure to loud noise in the workplace. He is fully capable of learning, remembering and performing simple, routine, and repetitive work tasks involving simple work instructions, which are performed in a routine, predictable and low stress work environment, defined as one in which there is a routine work pace, few work place changes, and no "over the shoulder" supervision. He can perform work tasks that do not require reading, writing, or mathematics skills above the 7th grade level, and which do not require fine hearing discrimination. He can interact appropriately with supervisors, coworkers and the public on an occasional basis and maintain concentration, persistence, and pace for 2 to 3 hours at a time with normal breaks.

AR 21.

At step four, the ALJ concluded that Mr. Saavedra was unable to perform his past relevant work as a painter, plumber, mailer handler, stocker, or concrete worker. AR 29. The ALJ found Mr. Saavedra was not disabled at step five, concluding that he still could perform jobs that exist in significant numbers in the national economy—such as ticket taker, shipping and receiving weigher, and routing clerk. AR 30.

Mr. Saavedra requested review by the Appeals Council, which, on May 14, 2016, denied the request. AR 1–12. Mr. Saavedra timely filed his appeal to this Court on July 15, 2016.[5] Doc. 1.

**IV.    Mr. Saavedra's Claims**

Mr. Saavedra raises two arguments for reversing and remanding this case: (1) the ALJ failed to incorporate into his RFC all of the moderate limitations in the opinion of state agency medical consultant Dr. Scott Walker, and (2) the ALJ failed to give adequate or legitimate reasons for rejecting the opinion of examining physician Dr. John R. Vigil.

Because the Court remands based on the ALJ's failure to properly analyze the opinion of Dr. Walker, the Court does not address the other alleged error, which "may be affected by the

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. 416.1481; *see also* AR 2.

ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.     **Analysis**

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[6] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the

---

[6] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective March 27, 2017.

medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." (citing 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

### A. The ALJ Erred in Failing to Either Incorporate, or Explain Why He Rejected, Limitations Noted in the Medical Opinion of Dr. Scott Walker.

Mr. Saavedra argues that the ALJ failed to account for all of the moderate limitations in Dr. Walker's Mental Residual Functional Capacity Assessment ("MRFCA"). Doc. 15 at 14–17. Specifically, he argues that the ALJ failed to account for the moderate limitations Dr. Walker found in his ability "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and in his ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 15–16. The Commissioner argues that the ALJ's RFC assessment is consistent with Dr. Walker's Section III findings, and that the ALJ was not required to discuss each of the moderate limitations in Section I of Dr. Walker's opinion. Doc. 18 at 4–8. The Court finds the Commissioner's argument unpersuasive, and agrees with Mr. Saavedra that the ALJ was

7

required to either include, or to explain his reasons for rejecting, the moderate limitations noted in Section I of Dr. Walker's opinion.

The Court rejects the Commissioner's argument that the ALJ is only required to address Dr. Walker's Section III findings. As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting similar arguments, the Program Operations Manual System ("POMS"),[7] regulations, and case law require the ALJ to address all of Dr. Walker's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d at 1158–64 (D.N.M. 2016). Specifically, "findings of fact made by State agency . . . psychological consultants and other program physicians and psychologists become opinions at the administrative law judge . . . level[] of administrative review . . . and requires administrative law judges . . . to consider and evaluate these opinions when making a decision in a particular case." POMS § DI 24515.013.[8] Further, "[b]ecause State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR [§§] 404.1527(f) and 416.927(f) (both effective Aug. 24, 2012 through March 26, 2017) require administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges . . . are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* And although ALJs also "must consider and evaluate" a

---

[7] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

[8] Archived on April 3, 2017 due to March 27, 2017 "Revisions to Rules Regarding the Evaluation of Medical Evidence," per POMS Instruction DI 24515 TN 13.

8

program physician's or psychologist's Section III RFC, Section I findings are not exempt from this scrutiny. *See id.*

Social Security regulations also require ALJs to "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence . . . ." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (both effective Aug. 24, 2012 through March 26, 2017). "Evidence" includes "findings . . . made by State agency medical and psychological consultants and other program physicians and psychologists . . ., and opinions expressed by medical experts or psychological experts that we consult based on their review of the evidence in your case record." 20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii) (both effective Apr. 20, 2015 through March 26, 2017). Like the POMS, the regulations do not exempt the Section I findings from an ALJ's consideration and evaluation. *See id.*

Case law also requires ALJs to consider the entire MRFCA, not just the Section III findings. The Court has surveyed the cases from the Tenth Circuit that expressly address the distinction between Section I and Section III findings. Two cases, *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) and *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. 2013) (unpublished), arguably could be interpreted in the Commissioner's favor, but the others could not. *Compare Smith*, 821 F.3d at 1269 n.2[9] ("Ms. Smith questions how the [ALJ]'s [RFC] assessment

---

[9] In *Smith*, the court held that the ALJ did not err in failing to repeat moderate nonexertional limitations from a medical opinion because the limitations were incorporated into the RFC. 821 F.3d at 1269. To the extent that *Smith* suggests that an ALJ may ignore a consulting psychologists Section I findings, that suggestion is inconsistent with the Tenth Circuit's earlier decisions in *Haga*, 482 F.3d at 1208 ("ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others"), and in *Frantz*, 509 F.3d at 1302–03 ("ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by Dr. Garnand, a nonexamining physician, but rejecting others without discussion"). However, one panel of the court cannot overrule another, *United States v.*

incorporates the moderate limitations indicated by Dr. Frommelt. . . . This is the wrong question. . . . Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the [ALJ]'s findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations."), *and Sullivan*, 519 F. App'x at 989 (acknowledging the POMS' distinction between Section I and Section III, rejecting the plaintiff's argument that the Section I limitations are "in addition to those in Section III," and finding that the ALJ had relied on the Section III findings and was not required to discuss the Section I findings), *with Nelson v. Colvin*, No. 15-6226, 2016 WL 3865856 (10th Cir. July 12, 2016) (unpublished) (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)), *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III"), *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC. The ALJ did so here . . . . And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted), *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir.

---

*Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005), and earlier panel decisions control over later ones, *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1191 n.2 (10th Cir. 2014).

2015) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, but holding that ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings), *and Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC). While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat: the Section III findings must adequately account for all the Section I findings. The case law therefore requires ALJs to consider all of the findings made in medical source opinions, including the Section I findings.

Thus, under *Haga*, 482 F.3d at 1208, and *Frantz*, 509 F.3d at 1302–03, the ALJ has a duty to explain why he adopted some of Dr. Walker's limitations while rejecting others. The Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Walker in the RFC assessment. *See Carver*, 600 F. App'x at 619 ("if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding"). If not, the Court must determine whether the ALJ adequately explained why he rejected the missing limitations.

In Section I of his May 1, 2013 MRFCA, Dr. Walker found that Mr. Saavedra had the following moderate limitations:

### Understanding and Memory

- Moderate limitation in the ability to understand and remember detailed instructions;

### Sustained Concentration and Persistence

- Moderate limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

### Social Interaction

- Moderate limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

### Adaptation

- Moderate limitation in the ability to respond appropriately to changes in the work setting.

AR 122–23.

In Section III of his MRFCA, Dr. Walker found that:

[C]laimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

AR 124.

The ALJ discussed Dr. Walker's opinion in a single paragraph of his RFC analysis:

The residual functional capacity conclusions reached by the medical consultants employed by the State Disability Determination Services also supported a finding of 'not disabled.' The State agency consultants opined no exertional functional limitations and essentially unskilled work (Exhibits 3A, 4A 7A & 8A).[10] However, as described above, the undersigned finds that the treatment notes and objective evidence supports further restriction. Therefore, the residual functional

---
[10] Exhibits 7A and 8A contain the MRFCAs completed by Dr. Walker. AR 121–24, 136–39.

capacity assessment contained in this decision accounts for the resulting
functional limitations. Such restrictions more than adequately account for the
claimant's subjective complaints as supported by the objective medical evidence
and any further restriction is simply not warranted by the objective findings.

AR 27.

As an initial matter, the Court notes that the ALJ did not state what weight he gave to Dr. Walker's opinion. However, the ALJ stated that he found Mr. Saavedra more limited than Dr. Walker did, and he did not specifically reject any of the moderate limitations in Dr. Walker's opinion. AR 27. Because he did not reject any of Dr. Walker's opinion, the ALJ was required to incorporate the moderate restrictions in Dr. Walker's opinion into Mr. Saavedra's RFC. Contrary to the Commissioner's arguments, it was not sufficient for the ALJ to account only for Dr. Walker's Section III findings in the RFC. Dr. Walker's Section III summary fails to account for all the moderate limitations he assessed in Section I. Specifically, in Section I, Dr. Walker found that Mr. Saavedra had a "moderate limitation" in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." AR 122. Also in Section I, Dr. Walker found that Mr. Saavedra had a "moderate limitation" in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 122–23. In Section III, however, without any narrative explanation, Dr. Walker found that Mr. Saavedra was capable of doing unskilled work,[11] and that Mr. Saavedra could

---

[11] The **basic mental demands of** competitive, remunerative, **unskilled work** include the abilities (on a sustained basis) to:

- understand, carry out, and remember simple instructions;
- make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions.
- respond appropriately to supervision, coworkers and work situations; and
- deal with changes in a routine work setting.

"understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR 124. Dr. Walker's Section III findings fail to account for his Section I findings that Mr. Saavedra had a moderate limitation in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *See id.* These abilities are work-related mental abilities that are critical to unskilled work, and the ALJ must adequately address them in the RFC.[12] *See* POMS 25020.010(B)(3)(e), (i). Because Dr. Walker's Section III

---

Program Operations Manual System ("POMS") DI 25020.010(B)(2)(a).

[12] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related

narrative does not incorporate his Section I finding of a moderate limitation in these critical areas, and because the ALJ failed to explain why he rejected these limitations, remand is required. *See Carver*, 600 F. App'x at 619.

The Commissioner claims that Dr. Walker "translated the 'moderate' limitations he noted in section I of the form into an RFC assessment in section III." Doc. 18 at 6. The Commissioner, however, provides no explanation of how Dr. Walker encapsulated the Section I limitations in Section III. The Commissioner cites *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), for the proposition that the ALJ does not have to include all "moderate limitations in the RFC assessment." Doc. 18 at 4. *Vigil*, however, is distinguishable. In *Vigil*, the Tenth Circuit held that the ALJ adequately accounted for the claimant's moderate limitations in concentration, persistence and pace by "limiting him to unskilled work." 805 F.3d at 1204. The moderate limitations at issue in *Vigil* were limitations in the claimant's ability to "perform complex tasks." *Id.* at 1203–04. The ALJ in *Vigil* noted that the claimant retained the capacity to "perform at least simple tasks." *Id.* at 1204. Because unskilled work only requires the ability to understand, remember, and carry out **simple** instructions and make **simple** work-related decisions, the Court in *Vigil* held that the RFC limiting the claimant to unskilled work adequately addressed the claimant's limitation in his ability to perform complex tasks. *Id.* The *Vigil* Court was careful to point out, however, that "[t]here may be cases in which an ALJ's limitation to unskilled work does not adequately address a claimant's mental limitations." *Id.* (citing *Chapo*, 682 F.3d 1285, 1290 n.3). Thus, *Vigil* does not stand for the broad proposition that a limitation to unskilled work adequately addresses **all** moderate limitations in concentration, persistence and pace.

---

mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

The Tenth Circuit has held only that moderate limitations in concentration, persistence and pace *may* be accounted for in an RFC that restricts a claimant to performing simple tasks or unskilled work. *See Lee v. Colvin*, No. 15-6027, 2015 WL 7003410, at *3 (10th Cir. 2015) (emphasis added). But this is not always the case. "A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) (citing *Chapo*, 682 F.3d at 1290 n.3, which stated that a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations). "[A] moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. Thus, "moderate limitations must be accounted for in the RFC finding." *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished).

In the instant case, unlike *Vigil*, the claimant's moderate mental limitations are not adequately addressed by a RFC limiting him to unskilled work, or by any of the limitations the ALJ included in his RFC. Dr. Walker assessed Mr. Saavedra with moderate limitations in his ability to "maintain regular attendance, and be punctual within customary tolerances" and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." These are mental abilities which are "critical for performing unskilled work." POMS DI 25020.010(d)(3)(e), (i). These tolerances and requirements "are usually strict." *Id.* Thus, unlike *Vigil*, which discussed a limitation in the ability to do complex tasks—a mental ability not required to perform unskilled work—the moderate limitations at issue in this case are critical to the performance of unskilled work. The ALJ therefore erred in not incorporating these limitations, or explaining his reasons for rejecting them.

The two limitations not addressed by Dr. Walker's Section III findings belong to the same "categor[y] of vocational significance"—Mr. Saavedra's reliability. *See Chapo*, 682 F.3d at 1289–90. The ALJ's colloquy with the vocational expert ("VE") highlighted the vocational significance of these limitations. The ALJ asked the VE if a claimant who "would routinely be off task 15 to 20 percent of the work period and would regularly miss two to three days of work per month" would be able to do the jobs the VE listed at step five. AR 79. The VE stated that "that amount of time off task or away from the work site" would preclude competitive employment. *Id.* Given that this hypothetical presented an individual with obvious difficulties completing a workday and workweek without interruptions from psychologically based symptoms, or one unable to maintain a consistent pace without an unreasonable number and length of rest periods, it is telling that the ALJ ultimately omitted these uncontroverted limitations from Mr. Saavedra's RFC.[13] *See Baysinger v. Astrue*, 11-cv-333 WYD, (D. Colo. Mar. 28, 2012), 2012 WL 1044746, at *5 (concluding that the ALJ's failure to include moderate limitations in assessing mental RFC "particularly egregious . . . because the VE testified that Plaintiff would be disabled if these moderate impairments were included in the RFC"); *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished) (finding that "[t]he omission of the ALJ's more specific findings is particularly significant given that, when the ALJ posed a hypothetical question incorporating all of the limitations found by [the doctor],

---

[13] The Commissioner argues that the ALJ's RFC was consistent with consultative examiner Dr. Owen's findings. Doc. 18 at 6. Dr. Owens, however, did not address the limitations at issue; thus his findings do not contradict those of Dr. Walker. *See* AR 426–29. Dr. Owens' exam addressed Mr. Saavedra's ability to understand and remember, and his abilities with respect to concentration, pace, social interactions and adaptation. *See id.* Dr. Owen found that Mr. Saavedra had moderate difficulty in being able to attend and concentrate. AR 428. But Dr. Owens' exam did not address Mr. Saavedra's likely absenteeism, his ability to be punctual, or his ability to complete a normal workday and workweek without interruption from psychologically based symptoms. *See* AR 426–29.

the VE opined that [the claimant] would be precluded from all work activity"; *see also Vamvakerides v. Colvin*, No. 14cv897 SCY, Doc. 25 at 14–15 (D.N.M. Apr. 7, 2016). The fact that the ALJ asked the VE about these limitations but then failed to include or even discuss Dr. Walker's finding of moderate impairment in these areas supports Mr. Saavedra's argument that the ALJ impermissibly "picked and chose" among the limitations, in violation of *Haga*.

VI.     **Conclusion**

The ALJ erred in failing to incorporate or to explain why he rejected at least two moderate limitations assessed by Dr. Scott Walker into Mr. Saavedra's RFC. The ALJ failed to either incorporate or explain why he rejected the moderate limitation in Mr. Saavedra's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The Court remands so that the ALJ can remedy these errors.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 15) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent